The last argument for today is in case number 20-2748, DDK Hotels v. Williams-Sonoma. Mr. Cardon. Yes, thank you, Your Honor. This is Craig Cardon on behalf of Williams-Sonoma Stores, Inc. May it please the Court. The District Court erred below by answering the question of who determines arbitrability with its own determination of whether the supplemental claim was arbitrable. And it did all of this without ever acknowledging the presumption in favor of arbitration. Essentially, the District Court crafted a new rule that unless the agreement to arbitrate includes all claims or any claim of a certain type, it must have some ambiguity in it as to what's arbitrable, and therefore some ambiguity as to whether there was a delegation of that claim. But that construct was expressly abrogated by the Supreme Court in Schein 1. What the District Court did here is exactly the logic used by the Sixth Circuit in Turey v. Main Street Adoption Services, and that's at 633 F. 3rd 496. Turey was expressly abrogated by Schein 1. I think this is illustrative of the scope of Schein 1 because Turey matches the reasoning of the District Court here almost identically by analyzing that agreement to arbitrate, which was under certain AAA rules, and noting that it was limited to certain types of claims, and therefore finding that delegation must match the limitation, and reserving for itself as a result the determinant of arbitrability to determine who determines arbitrability. The consequences... Can I ask you a question on that? What is the did not obviously expressly abrogate NASDAQ OMX, although we do clearly have a circuit split now with respect to the rule out of NASDAQ OMX. Obviously, the Circuit and the Fifth apply that express exclusion or that express carve-out concept. The Ninth and the First do not. The Supreme Court accepted review of that issue to some degree in what I call Schein 3, and heard oral argument on it before it issued its improvidently granted order. Reading tea leaves here now, Your Honor, obviously, but reading the oral argument, it appears that it's because they determined it was improvidently granted because they didn't grant review of the cross-petition, which addressed the question of whether there was delegation at all. A short answer, and that was a long answer, sorry, is I think if it were to go up to the Supreme Court, there might be some question about it, but there has been no decision that is expressly thrown out NASDAQ OMX and the express carve-out exemption. You're assuming it deals with simply carve-outs, that it's limited. Well, I think it does, and to the extent it goes beyond that, which is what the Apple EDDK here is really advocating for, that's an expansion that I do think flies in the face of Schein 1. May I ask, what is the distinction really between a carve-out and just a narrow arbitration clause? In other words, I understand that if you have a clause that says all disputes are arbitrable according to the AAA rules, you're pretty clearly saying that all disputes are arbitrable, including particularly in light of the AAA rules, whether this particular dispute is arbitrable or not. That all makes great sense, but here you have an arbitration clause that applies to one particular piece of the contract. It doesn't apply to everything, and I don't think you're contending that it does. I don't think I'm saying anything controversial here. It applies to a particular provision. So why would one think that the mere reference to the AAA rules with respect to this arbitration clause and this particular topic makes the arbitrators the judge of whether they can arbitrate something that comes outside of that part of the contract? Isn't that like a carve-out? Isn't that very like what the NASDAQ case is about? Well, I think it's not like it because it's not expressed. It gets to this question of implied, and now we kind of get into this area of the presumption in favor of arbitrability. And so I think the way to resolve that question between the carve-out and the question of the overall determination of what's arbitrable is the concept that where the parties have expressly said we don't want arbitrators to touch this issue, whether that be injunctive relief, which was the case in Schein 1, or here, fundamental decisions, which are articulated in the Joint Venture Agreement. That is a clear and concise statement of what's not included. The scope of what is included... Well, but what if there were dispute about whether something is a fundamental decision? Who would decide that? I think if there's a dispute as to what is a fundamental decision, that arguably, I think that arguably goes to the arbitrator. It's hard to talk about it in the abstract. Because the AAA rules? That's right, because once you've determined that there is some delegation, I think that's where the clear and unmistakable concept falls away. And the presumption in favor of arbitrability comes into play. And that's what the... So you keep mentioning this presumption in favor of... Where do you get this presumption in favor of arbitrability? And how does it interact with presumption that parties, unless they clearly and unmistakably delegate to arbitrators, they have the right to get a court? Right. So the presumption is found throughout the jurisprudence in first options and numerous other decisions. This was actually a question that was asked in Schein 3 by, I believe, Justices Kavanaugh and Gorsuch, what is the statutory basis of it? And I think the conclusion there was that it comes from a number of the Federal Arbitration Act, but there's no specific statutory basis for it. It really is a matter of federal common law under first options and others. But there's clearly some tension between that presumption and the clear and unambiguous. And I think Judge Lynch in the first circuit, not Judge Lynch here on the phone today, explained that in the decision last month in Beausé, saying under first options, we apply the presumption in favor of arbitrability in determining the scope of the delegation clause. So that's where I come to where I say that there's, once there is a delegation clause, then I think you have to look at the presumption of arbitrability. Well, but Mr. Cardin, my problem with this, and I recognize that this is a, to say the least, there is tension. But it seems to me as if we are starting to reverse some of the presumptions that apply. You know, you talk about what's implied and what's expressed. But, you know, we start from the proposition that arbitration is a creature of contract and that it's for the court to decide whether the parties have agreed to arbitrate. Then we say, but there's an exception to that. And the exception to that, and perfectly sensible, is that the parties by contract can agree that the arbitrators should decide arbitrability if they do so clearly and don't have to actually say that. By just referencing that they want this done by the AAA rather than by somebody else, or according to the rules of the AAA rather than by somebody else, that's clear and unmistakable. And I guess the problem I have with that is that's kind of an implication too. And while it's one thing when that happens in the context of a very broad arbitration clause, when it comes up in the context of something that is a narrow arbitration clause limited to a particular piece of a contract that itself has exceptions built into it, to say that the mere reference to the AAA is going in that context to overturn the presumption that the court decides arbitrability unless the parties clearly and unmistakably delegate it, I'm having trouble seeing why I should think that that is the case. If you follow that, if that makes any sense, can you just help me out? Because I'm not saying that's the right answer or trying to argue with you. I'm just trying to get my head around it. Certainly. I think if we go to this concept where it becomes this circular argument, and again, I'm not the first one to use that terminology, but if we're always going to have in this context where there's an incorporation of the AAA rules or the JAMS rules, which are arbitrability to determine who determines arbitrability, you've completely eviscerated the delegation concept. There is never anything left to delegate because the question of what is arbitrable has to be greater than what's in that bucket than the bucket of things that are actually arbitrable. Otherwise, it's illusory as to whether there is some determination of that. Had the Supreme Court not issued the improvidently granted ruling on shine three, that would have survived or not. I don't know, but it exists and it is narrow. I think it is an exception that, again, the DDK seeks to expand here. That expansion, again, just eviscerates any delegation provision because you're always deciding arbitrability to determine who decides arbitrability, and there's nothing left to decide. Let's say you do decide that it's arbitrable, and therefore, the arbitrator should rule on arbitrability. What do you do? Do you give the arbitrator your decision that because we've decided it fits within your authority to determine your own jurisdiction because we've decided it's arbitrable, so go ahead and decide whether it's arbitrable or not, but we've already decided that. I think that logic becomes- Can I ask you about the definition? The definition of disputed matters does not include arbitrability. You'd agree with that, right? It does not. It does not. So then, if disputed matters can go to court, then don't you have tension between that definition not including arbitrability and the AAA incorporation that says the arbitrators decide arbitrability? Doesn't that tension then itself take us out of clear and unmistakable intent to delegate? I don't think it does because I think the clear and unmistakable intention to delegate is to delegate something, and it's not clear and unmistakable as to exactly what, which is exactly what the First Circuit said, right? We apply the presumption in favor of arbitrability when we look at the scope of delegation, and that's where I distinguish the fact of delegation, which is not in question here, with the scope of delegation. I'm happy to answer any other questions, but I think I've got three minutes reserved, and I'm running out of my time here. Okay, we'll hear you on rebuttal, and next is Mr. Fitzpatrick. Good morning. May it please the Court. I think it is very noteworthy that the in Metropolitan Lifer versus Busick or the NASDAQ-OMEX case, in fact, the district court's reasoning and results were completely in accord with those decisions. Now, in the Shine case, which of course is very relevant here, the Supreme Court repeated its admonition that courts should not assume the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. I think that that language from Shine puts this presumption of arbitrability or pro-arbitration in its place, and because the appellant had moved to compel arbitration, the district court's task was to determine whether there was clear and unmistakable evidence in the contract to arbitrate this dispute, and in Busick, the court said three things that are particularly noteworthy about how the district court was to do that. Excuse me. Excuse me. Judge Sack, I'm happy. Your voice is slightly muffled, and I'm not sure there's anything you can do about it, and I'm not going to say that your words are not clear and understandable, but I'm having just a little trouble, and if you can get close to the microphone, fine. Otherwise, just ignore what I've said. No, you know what I'll do, Your Honor, is I'll try a headphone, see if that helps. Is that any better? Yes, for me. Okay, great. My ears, yes. Thank you. Okay, great. So again, the three things that this court said in Busick about how the district court is to look for this clear and unmistakable evidence, the first thing it said is that the court must examine the party's agreement to determine whether that evidence of an agreement to give arbitrability to the arbitrator is present. Second, it said what the arbitration agreement says about whether a whether it was the intention of the agreement to confer authority over arbitrability to the arbitrators. And third, and this is very important, the clearer it is that terms of the agreement reject arbitration of the dispute, the less likely it is that the parties intended to be bound to arbitrate arbitrability. Now, in the Busick case, what happened there is this court went and examined is the dispute present in that case an arbitrable one. And the court said is that if it was up to them, it's not arbitrable. Now, that was not dispositive of the issue of whether arbitrability had been arbitrated, but it became very relevant when this court squared its decision with Schein. And in that explanation, the court said, look, even though we find the argument that the claim for our that this is an arbitrable claim is groundless, that's we're not running afoul of Schein and the abrogation of the holy groundless exception. The court went on to say we reject your argument, because on consideration of all of the evidence and the intentions of the arbitration agreement, including the groundlessness of your claim that it's arbitrable, we find that the agreement does not clearly and unambiguously provide for arbitration of the question of arbitrability. And, you know, like the unsuccessful party in Busick, who is seeking arbitration of construes Schein to mean that a court considering whether the arbitration agreement confers arbitrability to the arbitrators may not consider whether the agreement calls for arbitration of the dispute. And this court rejected that, and it should reject it again today. And the argument you've heard in today and in the briefs is that by the court below determining that the claim was not arbitrable, that they have run afoul of the holy groundless abrogation of Schein and committed error is wrong on two levels. First of all, the judge looks at the arbitration agreement, fights Busick, follows Busick, and says we do not, he did not find that a delegation of arbitrability was unmistakable. He then proceeded with post-Schein, is that right? Oh, yes. Yes. And that's why it's so important here, because having Schein then decided, this court then told district courts, here's how you deal with claims that the issue of arbitrability should be given to the arbitrators in the post-Schein world. And what you need to do is to read the agreement, determine whether you believe that the claim is arbitrable, not because that resolves the issue finally, but it speaks to the issue of whether the parties have expressed an intent that is clear and unmistakable to arbitrate arbitrability. And that's exactly what the district court did here. It said, look, I don't find the clear and unmistakable intent to arbitrate arbitrability. And now I move on to the question about, is this arbitrable? And remember that the appellant below had asked the court to compel arbitration. So the court was simply doing exactly what the appellant asked, to send us to the arbitrator. And the court said, look, I don't think the issue of arbitrability is clear and unmistakable. So now I move on to the question of, is it arbitrable? Is your claim arbitrable? And I find that it is not. And the appellant here does not make an argument that its claim is arbitrable. You cannot make that claim. The section 16 that the court has referenced in some of its questions is a corporate governance mechanism. It applies solely to instances where the board ends up in a deadlock because it's an evenly divided board. And it creates a several-step process to resolve that deadlock. One of those steps is arbitration. This becomes a disputed matter, a defined term. And if there's going to be arbitration, the AAA rules apply. And that brings us, I think, to the application of NASDAQ to this case. Now, in NASDAQ, there's this argument that the appellant makes, which is that the AAA rules apply. And the only thing that really matters is if there's an express carve-out like a fundamental decision or injunctive relief. But that misreads NASDAQ. In NASDAQ, NASDAQ talks not simply about was, except as may be provided in the NASDAQ OMX requirements, comma, all claims disputes shall be settled by final arbitration. And then there's the incorporation of the AAA rules. So just like in NASDAQ, the contract here draws a line that divides claims into two camps, disputed matters, a very narrow class of disputes involving corporate governance deadlocks. Those are arbitrable. And everything else, which is not a disputed matter, is not arbitrable. And what OMX says is that the incorporation, excuse me, NASDAQ OMX says, is that the incorporation of the AAA rules applies to such arbitration as may arise under the agreement. And it ultimately found that some of these NASDAQ requirements were applicable to the claim there. And therefore, they were outside of the non-arbitrable side of the line between arbitrable and non-arbitrable. And the court went on to say that because there is this qualifying provision that delays application of the AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration. In short, until arbitrability is decided. Oh, thank you. So I just, look, it is our contention that this case is governed by this court's decisions in BUSIC and NASDAQ OMX. The district court's decision completely follows those two cases. The appellant does not argue otherwise. And the district court articulated in its decision, the dispute about prevailing parties from this Delaware case that the appellant took the appellee to and lost is not a disputed matter. They won't even argue that it is because it would be a frivolous argument. It doesn't involve the board. Excuse me. Excuse me. I just want to make sure. It is that Delaware proceeding and indeed the attorney's fees in that Delaware proceeding is all that this, what's before us addresses. Is that right? That is correct. We went to Delaware, the Delaware Chancery Court on our motion, dismissed the case. We made a demand to pay our fees under 21H of the agreement, which was the prevailing party provision. They refused. We filed a motion to supplement the complaint, our existing complaint for an additional breach of contract. And then we went off on this long journey involving arbitration and arbitrability. And I would ask that the court affirm the district court, its decision is entirely in accord with this court's decisions. And this court has not been provided with any basis for reversal. Thank you. Thank you. Mr. Cardone, you have three minutes for rebuttal. Yes. Thank you. So I want to go to the court's decision, which is frankly two paragraphs. So it's a 25 page decision, but there are only two paragraphs that address this issue. And the court does not rely upon NASDAQ OMX. It relies only upon Buick SEC. And to me, Buick SEC is really... Isn't that because you would have the argument that NASDAQ is implicitly overruled by Shine and Buick SEC comes after Shine and therefore is, you know, the reaffirmation of NASDAQ post Shine. So that's correct in terms of that order. But Buick SEC is a different beast. Buick SEC really is a formation case where I read the court saying that this is the subject matter of the dispute occurred long after the point. No one was a member of the NASD, much less FINRA. The claims were brought long after anyone was there. And the court talks about you can't have a situation where centuries on you have a dispute over a real property, and yet you're going back to an NASD arbitration between these parties. I view that as a formation case. I would like to address, I think, one of the questions on whether arbitrability and the question of what gets submitted for determination of arbitrability are coterminous. And I think there's an interesting discussion in the dissent in the recent Fausse case in the first circuit where the court talks about the distinction between the defined terms. And there in the defined term, and it matched the defined term in the arbitration clause. Here you've got a defined term, disputed matters, in the arbitration clause. But in the delegation provision in Section 7 of the AAA rules, it just talks about all claims. It is not that defined term. So I do think, and this is the error that I think a number of the, that, that Tory and the other cases. Is the delegating clause limited to disputed matters? I mean, is it, the whole point is that AAA rules are going to apply for when it goes to arbitration, but then you're kind of pulling out of those rules that everything is arbitrable. Well, I don't, I wouldn't, I don't agree with that because I think then you're, you're again, eviscerating the concept of a delegation when there's an express delegation provision in the AAA rules. I guess it's not clear and unmistakable to me. But it's clear and unmistakable that there was an agreement to delegate something. And then it's just a question of what's the scope of that delegation. Could you, could you help me out to, this may, may not be exactly before us, but could you in one or two sentences tell me what you are going to argue to the arbitrators in order to persuade the arbitrators that this is an arbitrable dispute? Certainly. There are, the, the matters that are required to be submitted for arbitration are actually laid out in Exhibit C of the Joint Venture Agreement. Exhibits, one of the provisions there is actions in, in contravention of the agreement. The argument here is we breached the agreement. We acted in contravention of the agreement by not succumbing to the demand for fees. That should be submitted to the board. Then if there's a deadlock, it goes to a mediation process and then to arbitration. The appellee here short-circuited all that and said, we're making a demand and then we're suing you regardless of the fact that, that Exhibit C says actions in contravention of the agreement must be submitted to the board for, for determination. And only then do you proceed with the rest of the dispute resolution provisions. So they, the arbitrators will get to decide what should be put to the board, is the argument, as opposed to the disputed matter, once there is a deadlock on the board. The argument, and I think the premise was that, what would you argue to the arbitrator? Yeah, right. Right. But what you're arguing, what you're arguing to the arbitrator is going to be that if they fail to submit something to the of what you think should be submitted to the board, that is an arbitrable matter. That's the argument. Yeah. Okay. I got it. That's correct. Absolutely. Certainly. And the joint venture has been dissolved and there are now disputes around that dissolution in terms of the windup that are an issue. There have been notices of deadlock that have been issued. And so there will be arbitration proceedings around this very issue that gets to the heart of who is the prevailing party, given that the dismissal was without prejudice. And by operation of the joint venture agreement itself, it was subsequently dissolved because there were no operative contracts in place. So with that, I think I have, if I haven't run out of my time, the only distinction I would make in closing is that I think post Shine One, the distinction between narrow and broad provisions has largely gone away. And I would again suggest to the court to look at what happened in Turey and the subsequent decision in the Sixth Circuit in McGee to see how they applied Shine One to Turey, which was exactly the reasoning that the district court used here. Thank you both. The remaining two cases are on submission. So that concludes our argument for today. I'll ask the court and deputy to adjourn. Court is adjourned.